# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ERIC G. BANKS SR.

D.O.B. 12/03/65

D.O.C. #424687

MCI-J.

P.O. Box 549

JESSUP, MARYLAND 20794

    PETITIONER, pro se

                CIVIL CASE No:

V.

MARYLAND ATTORNEY GENERAL

      AND

WARDEN ACLUFF, ET. AL.

    RESPONDENTS,

\* \* \* \* \* \* \* \* \* \* \*

FILED ___ ENTERED
LOGGED ___ RECEIVED
AUG 2 4 2020
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY___ DEPUTY

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO TITLE 28 U.S.C. § 2254

COMES NOW THE PETITIONER, Eric G. Banks Sr., pro se and hereby moves this Honorable Court for habeas corpus relief pursuant to Title 28, of the United States Code § 2254. RESPECTFULLY SUBMITTED this 19th day of August 2020.

ERIC G. BANKS Sr.
D.O.B. 12/03/65
D.O.C. #424 687
MCI-J
P.O. Box 549
JESSUP, MARYLAND 20794
      PETITIONER, pro se

               Civil Case No:

V.

MARYLAND ATTORNEY GENERAL
      AND
WARDEN ACluff, ET. AL.
      RESPONDENTS,

\* \* \* \* \* \* \* \* \* \* \*

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C 2254

COMES NOW THE PETITIONER, Eric G. Banks Sr. #424687, pro se, hereby files this Petition for a writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 alleging Fourth, Fifth, Sixth and Fourteenth Amendment violations to the United States Constitution. Futhermore, Petitioner alleges the following

2

state law violations in support of this petition
for relief states as follows:

## STATEMENT OF FACTS

On March 26, 2014 the Petitioner trial
began and concluded on April 4th 2014. Petitioner
was tried and convicted in Anne Arundel Circuit
Court. The Petitioner was sentenced to 30 years
on April 4th, 2014 in Anne Arundel Circuit Court.
Petitioners trial attorneys was Mrs. Elizabeth Palan,
Mr. William Davis and Mr. Drew Northrop all
from the Public Defenders Office. The presiding
Judge was the Honorable Philip T. Caroom.

On April 21, 2014 a timely appeal was
filed. Which was denied. The Petitioner
filed an Application for Review of Sentence on
April 30th, it was denied.

On June 25, 2014 the Petitioner filed
a Modification of Sentence, which was denied
July 8, 2014. On October 9, 2015 the Petitioner
filed a request for § 8-505 drug and
alcohol treatment. Which was denied without
prejudice on October 13, 2015.

The Court of Special Appeals affirmed
Petitioners conviction in an Unreported Opinion
filed in that Court on June 30th 2016. On

3.

February 10th, 2017, Petitioner filed a Petition for Post-Conviction Relief. On April 7, 2017 the Petitioner filed an amendment to this Petition. Petitioner filed additional amendments on July 24, 2017 and on August 2, 2017.

On August 12, 2017 Petitioner's attorney filed a motion for a withdraw of the Post Conviction Petition against the Petitioners wishes. The Petitioner filed a Motion to withdraw or disregard the Petitioners attorney (Mr. Norman Handwerger) request for a withdrawal August 17, 2017 after attorney told the Petitioner his intentions on a visit.

On September 18, 2017 the Petitioner filed a petition for Post Conviction Relief. On January 31st 2018 the Petitioner filed an Amendment. The State filed Opposition on January 18th 2019 by electronic efile. The Petitioner never received a copy until the day of his Post Conviction Hearing in court. The Petitioner wished for his petition and all amendments to that petition be heard during his Post-Conviction Hearing. The Petitioner never discussed or agreed on his own or through his attorney to not include the petitioners or any of the amendments. Judge, stated in court

4

that, "I have your petition, transcript and all other documents. The Petitioners Post-Conviction petition was denied on 8/29/19. The Petitioner received a copy of the decision 9/16/19. Which is stamped marked on the envelope by the MCT-J mail room officer.

The issues raised on Direct Appeal were:
1) The trial court erred in allowing a state witness to read unauthorized and unreliable hearsay into the record.
2) The trial court erred in limiting the cross examination of the state witness.
3) The trial court erred in issuing an incorrect and confusing jury instructions on reasonable doubt.
4) The Appeal was put in without input from Petitioner. Attorney's argued what they felt was argueable. Which does not count as a waiver of Petitioners right to raise issues in his Post-Conviction petition, that he feels was violated in his case.

## Post-Conviction
A) THe Post-Conviction was held on 1/22/19 and on 3/29/19.

5

B) The Post-Conviction Hearing Presiding Judge was Honorable Glenn Klavans.

C) Post-Conviction attorney failed to assist Petitioner with legal defense as to allegations of error. Post Conviction attorney failed to assist Petitioner with legal defense as to allegations of error. First attorney (Mr. Norman Handwerger), was removed from the Petitioners case by the Judge after the Petitioner filed a motion requesting a new attorney. The Petitioner filed a motion again with new attorney (Mr. Jonathan Heshmatpard, but it was denied.

The Petitioner wished for his petition and all amendments to that petition be heard during his Post-Conviction hearing. The Petitioner never discussed or agreed on his own or through his attorney to not include the petition or any of the amendments. The Judge stated in court that "I have your petition, transcript and all other documents. The Petitioner Post-Conviction petition was denied on 8/29/19. The Petitioner received a copy of the decision 9/16/19. Which is stamped marked on the envelope by the MCI-J

6

mail room officer.

D) The allegations of error the petitioner filed

1. Failed to properly object to certain events at trial and to preserve the record for direct appeal as to evidentiary matters, (all physical evidence, testimonial evidence and incorrect jury instructions) and yield on these objections by not offering specific objections necessary for trial court ruling, where evidence; which otherwise should have been properly excluded, that was prejudicial to Petitioner's case, was erroneous.

2. Failed to object to inaccurate documents and check the accuracy of documents for trial. This would have allowed the Petitioner defense attorney to negate prosecution and witness testimony.

3. The PSI report was inaccurate and did not contain much about Petitioners true background. This is something that the attorney for the Petitioner should have known and took the advice from the Petitioner when the Petitioner informed the attorney of this matter.

7

4. Attorney failed to have the proper information that would negate the elements of old and out dated offenses that was used during trial. This would allowed the ~~attorney to object to disputed items.~~

5. Failed to assure by objecting, through deficient performance that the instructions to the jury were given as to manslaughter and thereby prejudging the Petitioner by not including one of the original indictments in the instructions. Failed to ask for the Manslaughter instructions.

6. Failed to file for a new trial based on (ineffective counsel). Counsel stated in court he would ask for a new trial on manslaughter instructions and never did.

7. Failed to object to prosecution flagrant commits and unsupported statements by prosecution.

8. Failed to investigate all possible defense.

9. Failed to present the interrogatory questions and report of the interview Mr. Tremain Calhoun had with detective Rattell, Mr. Trainer and Prosecution.

10. Failed to do own PSI to help prepare for Petitioners case.

11. Failed to object to statements allegedly made by Petitioner or co-defendants; after no Miranda Rights was read or given to any of the defendants.

12. Failure to object and argue to suppress to illegal evidence by the standards of when a Petitioner is on trial.

13. Failed to raise very crucial facts during cross-examination or closing. Arguments relating to DNA evidence offered at trial, the significance of the DNA evidence and accuracy of testimony during trial.

14. Failure to raise the relevancy of the evidence that surround the lab report to see if the fact in question was more or less likely to occurred. (DNA evidence).

15. Trial counsel failed to suppress or object to illegal or otherwise inadmissible evidence. Specially, evidence that apparently was sent by the state to an individual that was not involved in the trial. The gentleman watched all the evidence DVD's. After watching he turned them back over to the state. Case should not be decussed or viewed outside of court room

## The Prosecution Misconduct

B1. The Prosecution was in error for vouching for the state witness, Tremain Calhoun.

B2. The defense was not given ample time to prepare a defense due to Prosecution giving the lab report to the defense later.

B3. The Prosecution was in error for requesting that the lab go outside of normal protocol and write a report they normally do not write. Which was used for Petitioners trial. This was a denial of Petitioners due process rights.

B4. The Prosecution entered a plea with the Petitioners co-defendant in exchange for his testimony, after knowing that he lied during proffer session with the state.

## Court Error

C1. Sentence Enhancement - The judge stated during the Sentencing in court that he was giving the Petitioner 2 extra points for the victim wounds. This was done after the Petitioner was already charged for the actual offense itself.

C2. The court erred by allowing computer generated call records. The Prosecution used Mr. Banks phone records to determine when

10

arrived on the scene of the alledged crime. Also tried to pin point the conversation between him and his daughter without using the phone towers.

B3. The court erred by allowing the testimony of Mr. Calhoun who statements were incosistent with the three prior accounts he gave of what occurred. He stated three different accounts to the Prosecution, Mr. Trainer and Det. Rattell, Even stated he lied.

B 4. The court erred by not asking the jury voir dire questions as to whether or not any of the jury knew the gentleman who sent the ring package or the gentleman who allegedly received the DVD's containing evidence of the Petitioners case. To assume that no one knew the two gentleman is a denial of the Petitioners due process right.

Reason(s) that the Circuit Court erred in Denying Petitioners Application for Post-Conviction Relief:

C1. The Petitioner filed an appeal pertaining to the erroneous use of an incorrect, outdated and confusing jury instruction

on reasonable doubt. The appeals court has the discretion to review unpreserved errors and rarely do so. If the appeals court, chose not to exercise their discretion, it does not constitute finality in terms of litigation.

The Petitioner filed a Post-Conviction petition. In the petition the Petitioner claimed ineffective assistance of counsel. One of the reasons was for the Petitioners attorney not objecting to the outdated, incorrect and confusing jury instructions.

It was admitted that the court of appeals removed "fanciful doubt" language from the Pattern Jury Instructions in 1999 after the Committee on Pattern Instructions received numerous complaints that the language was confusing to jurors. Ruffin v. State 394 Md. 355, 361 (2006). In the case the court of appeals held that trial courts must instruct the jury on the reasonable doubt standard of proof, in a manner that closely adheres to MPJ1-Cr. 2.02 adding that [d]eviations in substance will not be tolerated. Id at 373.

At the Petitioners trial the court
deviated from the pattern instructions and
gave an outdated version, instructing the
jury as follows: A reasonable doubt is a
doubt founded upon reason. It is a fanciful
doubt, a whimsical doubt or a capricious doubt.
Proof beyond a reasonable doubt requires
such proof that we convince you of the
truth of the facts so that you would be
willing to act upon such belief without
reservation in an important matter in your
own business or personal affairs. If you
are satisfied to the defendant's guilt
to that extent, then reasonable doubt does
not exist and the defendant must be found
guilty. T-5 (app. 13) (emphasis added)
(Appellant Brief (Pg. 33-35).
(UN reported Opinion Eric G. Banks v.
State No. 304 September Term 2014) Pg.
30. "Here although appellant challenges
the instructions on appeal, defense
counsel did not object below to the
Courts reasonable doubt instructions Pursuant
to Maryland Rule 4-325(e) [n]o party
may assign as error the giving [of]
an instruction unless the party on

13

record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. . . . An appellate court . . . . May however take cognizance of any plain error in the instructions, material to the rights of the defendants, despite a failure to object.

During the Petitioner Post-Conviction hearing the trial defense attorney was asked on the stand, why he did not object to the outdated jury instructions? Mr. William Davis (attorney) replied that he did not know that the instructions were outdated. As the Petitioners attorney its part of his duty to understand, research and represent the Petitioners case on every element of the case. This would have allowed the Petitioner the opportunity of due process under the Sixth and fourteenth Amendment of the United States Constitution.

State of Maryland v. David Edward Rose Court of Appeals of Md. 345, 238, 691 A. 2d. 1314; 1997 Md. No. 80, September Term 1995. The intermediate appellate

court held. that the reasonable doubt instructions given at defendant's trial was constitutionally deficient and that by instructing the jury that the law "beyond" had no meaning, the trial judge placed a lesser burden of proof upon the state than the law required. (The language that was used was not explained or defined for the jury).

James Allen Ruffin v. State of MD. Court of Appeals of Md. 394 Md. 355; 906 A. 2d. 360; 2006 Md. No 86 September Term 2005. The State's high court found that giving a reasonable doubt instruction, which did not closely track Md. Pattern Jury Instructions Crim. No. 2:02 was reversible error.

How could the instructions given at the Petitioner's trial be closely tracking the Maryland Pattern Jury Instructions; if the language that was used was not understood.!?

Every defendant in every criminal trial is entitled to the same presumption of innocence and reasonable standard of proof. Uniformly in defining those terms for the jury, by giving the Pattern Jury Instruction; ensures that all defendants will equally receive an appropriate definition of the

15

presumption of innocence and reasonable doubt standard of proof. Id at 372-73; see also Wills v. State, 329 Md. 320, 385-88 (1993) (holding that a court's instructions that defined reasonable doubt as "the type of doubt that would cause you to hesitate and not act in an important decision in your life," and that distinguished reasonable doubt from a "nagging doubt" was improper; noting that a "Nagging doubt" was improper; noting that a "nagging doubt" is not the equivalent as acting "without reservation"). In the Petitioner's case the trial court failed to closely adhere to the Pattern Jury Instructions just like in Ruffin, Wills and Rose. The court gave an out dated set of instructions which contrasted reasonable doubt with a fanciful doubt, a whimsical doubt or a capricious doubt.

In the case of Daniel Frank Turner v. State of Md. Court of Special Appeals of Maryland 181 Md. App. 477; 956 A. 2d. 820; 2008 MD. App. Lexis 106 No. 2666 September Term 2006 September 10, 2008 filed. The Appellate Court held that it was not error or plain error to add a sentence equating a reasonable doubt to a fanciful doubt, a whimsical doubt or a capricious doubt to the reasonable doubt pattern jury instructions as the language was technically correct and did not alter the states burden of proof.

16

A person supose to be found guilty beyond a reasonable based on the "facts". Definition of fanciful-1.Suggested by fancy; imaginary; unreal 2. Led by fancy rather than by reason and experience; whimsical. Capricious - subject to led by or indicative of caprice or whim. Caprice - sudden change of mind without apparent or adequate motive; whim. None of these definitions support guilt beyond a reasonable doubt based on evidence and facts. There has been complaints that the use of fanciful, whimsical and capricious forms of doubt was confussing. Their definitions are confussing and off base in terms of proof beyond a reasonable doubt so how can a jury know how to properly apply these three forms of doubt to one case? Especrally if not fully understood. This is why it was removed in 1999.

The misunderstood language has an accumulative effect on the burden of proof, a deviation from the Pattern Jury Instructions and against the United States Constitution that affected the Petitioners Case. The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Md. Const. Decl. Rights Art 24 respectfully guarantee that the accused be convicted only upon proof beyond a reasonable doubt and therefore the jury instructions on the standard is an essential component of

17

every criminal proceeding.

The time it took to deliberate could be inferred it was a result of the confusing jury instructions. It so long they was about to return the Petitioner to the detention center. Also the jury acquitted the Petitioner of conspiracy, the use of a fire arm, possession of a fire arm, and Manslaughter. First and Second degree murder was the only two they had to choose from. But the evidence did not fully support the two charges and the confusing jury instructions did not help. Petitioners attorney failed to object to the out dated and confusing jury instructions. Everett v. Beard, 290 F. 3d 500, 515-16 (3d Cir. 2002) Counsel's failure to object to jury instructions was prejudical because more than reasonable defendant would not have been convicted of 2nd degree murder. Reggan v. Norris 365 F. 3d 616, 622 (8th Cir. 2004) Counsel's failure to object to jury instructions was prejudicial. In Ruffin v. State, the court rested its decision not on the particular instructions given by the trial court, but instead; on the fact the instructions deviated from the pattern jury instructions. Also see Wills v. State. Between the deviation and the application of the confusing instructions makes the question of whether the case was proved beyond a reasonable doubt and did the jury understand how they arrived at their decision?

18

# ARGUMENT

Pursuant to U.S.C § 2254, a writ of habeas corpus is available on the basis that the petitioner's conviction or sentence violated the Constitution, laws, or treaties of the United States. In the seminal case of Brown v. Allen 344 U.S. 443, 458, 73 S. Ct. 397, 97 L. Ed. 469 (1953), the Supreme Court held that all federal constitutional rights that have been incorporated through the Fourteeth Amendment Due Process Clause and thereby made applicable to the states are cognizable on federal habeas corpus claims and that a habeas corpus petitioner can press such claims even if they had been fully and fairly adjudicated in the state courts.

It is true that federal habeas review is generally not available to correct errors of state law. See, e.g., Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d. 385 (1991); Oxerlaugh v. Stewart, 129 F. 3d. 1027, 1032 (9th Cir. 1997), certs denied, -- U.S. --, 119 S. Ct. 237, 142 L. Ed. 2d. 195 (1998). Where the state created a liberty interest, however, it is not correct to say that the question is "merely a matter or state procedural law." Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980) "The failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state."

19

Fetterly v. Paskett, 997 F. 2d 1295, 1300
(9th Cir. 1991). Moreover, federal due process may
be violated where the State introduces evidence
that so "fatally infects the proceedings as to
render them fundamentally unfair." Jammal v.
Van de Kamp, 926 F. 2d 918, 919 (9th Cir. 1991).
See generally Dowling v. United States, 493 U.S.
342, 352 (1990) ("We...have defined the
category of infractions that violated Fundamental
fairness very narrowly,").
Mr.

    Mr. Banks the Petitioner, argues that
his continued incarceration based upon the above
referenced conviction is a result of multiple
violations of his Sixth Amendment and Fourteenth
Amendment rights. Mr. Banks conviction was
based upon witness testimony and evidence presented
at trial that did not meet the evidentiary burden
of proof beyond a reasonable doubt. The Petitioner
Mr. Banks contends that he was denied his
Fourteenth Amendment Right to Due Process,
Sixth Amendment Right to Effective Assistance
of Counsel, Sixth Amendment Right to Cross-
Examine Witnesses, and was deprived of his
Fifth Amendment right of due process of law.
    The convictions and sentences under
which the Petitioner is imprisoned are unlawful
and void because of multiple violations of the
Petitioner's right to due process of law, guaranteed
by the equal protection of the law, guaranteed
by Fifth and Fourteenth Amendment, and violations
of the right to the effective assistance of

Counsel protected by the Sixth Amendment. These violations are not mere irregularities, but are major constitutional violations which cast significant doubt on the fairness of the Petitioner's jury trial and more importantly, call into question the reliability of the verdicts.

Petitioner's trial counsel's assistance was unreasonable considering all circumstances of the case, and that there is a reasonable probability that, absent the below listed errors, the fact finder would have had a reasonable doubt respecting guilt. Trial Counsel William Davis, Elizebeth Palan, Northdrum and Appellate counsel JUAN Reyes, assistance were unreasonable in that the specific acts or omissions that failed to meet the prevailing professional norms of a defense attorney.

The Petitioner maintains that he was denied a fair trial in violation of the Due Process Clause as guaranteed by the Fourteenth Amendment, when the State Prosecutor committed prosecutorial misconduct by making misleading statements that inflamed the jury to wrongfully convict Petitioner.

The following allegations of error are made with an accompanying Memoranda of law incorporated:

(A.) The state failed to prove the alleged crime against the Petitioner, beyond a reasonable doubt. I. In opening the State's Attorney gave contradicting and unsupported statements pretaining to the Petitioner's blood being on the alleged weapon. Which the lab analyst stated on the stand that

21

there was no blood on the handle of the Knife.
II. The lab report from the analyst had many
flaws and contained nothing about the alleged
skin cells on the handle of the Knife. States
attorney says blood, lab analyst says skin cells but
doesn't put it in her report. The report was
given to the defense attorney less than two
weeks before trial. A unlawful tactic by the
state.

III. The witness Mr. Calhoun gave four different
statements or accounts as to what occurred
the night of the incident. He also testified
on the stand that the Knife belonged to him,
and he brought the Knife to the scene. He
stated he had the Knife out and tucked by
his side. The victims blood was found in Mr.
Calhoun's pocket. He stated he put the Knife
in his pocket after the alleged stabbing
and pulled it back out and threw it in the
wet snow when the police arrived.
The states attorney stated that Mr. Banks the
(Petitioner) blood was on the handle of the
Knife. The lab analyst stated skin cells but,
placed it no where in her report. But when Mr.
Calhoun shorts and pants were tested; the pocket
where Mr. Calhoun stated he placed the Knife
only showed results of blood and DNA from
the victim and Mr. Calhoun. How this possible?
IV. The state stated, to the jury that the
Petitioner Kneeled down on the victims back
and stabbed him. The medical examiner
stated that he could not tell if the victim

22

was standing or lying at the time of the alleged stabbing. [2] Second the examiner stated the victim was still moble at the time of the alleged stabbing and shooting. The victim was stabbed in the head, shoulder, neck ear. The victim was 6/7 and 300 lbs. Mr. Calhoun is 6/2 and weigh 170 lbs. The Petitioner is 5/4 and weighed 160 lbs at time of incident. Other co-defendant Erica Banks was 5/3 and weighed about 110 lbs. No one on the scene was tall enough to inflict does types of wounds but Mr. Calhoun. [3] Again the state stated the Petitioner kneeled down on the victims back while he layed face down. The medical examiner stated in his report that the wounds was from back to front. According to the states theory it would mean the wounds was applied in a down shifting motion like shifting gears. (Legally impossible). What the medical examiner stated fit the description of the accounts the Petitioner gave. This also another reason why it is important for the jury instructions should be understood.

(B) The Petitioners trial attorney failed to file for a new trial based on counsel failure to ask for instructions on manslaughter. During the sentencing hearing the attorney ask to delay the sentence so he could file a motion in writing for a new trial, due to he felt he was ineffective for not asking for Manslaughter Instructions. Manslaughter was one of the Petitioners charges. Then the court

23

attempted to paint several pictures of what occurred and why. One of those pictures was that the Petitioner acted due to his daughter being involved. Displaying adequate provocation or diminished capacity. The Petitioner feel the jury should have been afforded the opportunity to choose Manslaughter. The delay in deliberation could have been inferred that manslaughter should have been something that the jury should have been allowed to consider. The fifth Amendment guaranties a defendant the right to be tried for only those offenses presented in an indictment returned by the grand jury. Manslaughter was one of the Petitioners charges and indictment. Randall, 171 F. 3d 195, 203 (4th Cir. 1999) constructive amendment, per se reversible error if defendant did not preserve issue by objection. Bazzle v. State, 426 Md. 541, 548, 45 A. 3d 166 (2012). The court of Appeals has recognized, however that whether or not a trial court abuses its discretion in giving an instruction turns on the three considerations:

(1) Whether the required instruction was a correct statement of the law;

(2) Whether it was applicable under that facts of the case;

(3) Whether it was fairly covered in the instructions actually given.

The state claim Manslaughter does not fully support the Petitioner account of

what occurred; neither do the instructions on First Degree murder. But the state still charged the Petitioner with First Degree Murder and gave instructions. The jury should have been allowed to hear instructions for a lesser offense. Graham v. State, 146 Md. App. 327, 340, 807 A. 2d 75 (2002).

Further, the mere fact that there is evidence inconsistent with the version of the events asserted by the defense is simply irrelevant to the question of whether the jury should be afforded the opportunity to evaluate any and all theories of defense generated by the evidence. The trial attorney should have requested manslaughter instructions when the instructions was being prepared. If the Petitioner would have used sound judgement, there is a possibility the Petitioner would have been acquitted or given a lesser offense and sentence.

(C.) Attorney failed to object to inaccurate documents and check the accuracy of the documents before trial. The lab report was a very crucial part of the Petitioner trial. It was a document that should have been fully examined. The lab report was given to defense by the prosecution two days before trial. T-CCH pg. 13 line 24. U.S. v. Davis, 244 F. 3d 66, 671-72 (8th Cir. 2001)(prejudice found because government provided DNA evidence on the eve of the trial, preventing defense from evaluating and confronting evidence).

25

*66, 671-72 (8ᵗʰ Cir. 2001)* (prejudice found because government provided DNA evidence on the eve of the trial, preventing defense from evaluating and confronting evidence). The following is some of the reasons why document should have been fully examined before trial and objected to during trial.

1.) The report contained no statistics about the alleged skin cells. *Armstead and Diggs* state, no DNA evidence can be introduced without statistics, *Diggs 213 Md. App. 28 T-INC. pg. 26 line 16-18, T-CCH pg. 12 line 8-9* prosecution states, **"It is inclusive perhaps if you do not provide the statistics."**

2.) None of the items that were tested was not suitable for entry in the combined DNA Index System (codis) database, but one item, the knife handle. How? This is one of the main elements in the documents that should have been examined and challenged. The Petitioner own blood on his hand and own shirt was not suitable for the (codis) database. This is a very questionable fact, due to the knife handle was in the hand of Mr. Calhoun, then in the pocket of Mr. Calhoun after the alleged stabbing, then thrown in the wet snow after the officers arrived. Then was opened by detectives before arriving to the lab. What was purpose of opening the knife? Was the handle contaminated by the detectives? The knife handle was suitable for the combined database. Mrs. Hayes state she did no serology report, but in her report state that the Petitioner and the Victim DNA was on the handle of the knife. **Were the victim skin cells on the handle of the knife as well? None of the skin cells existed just was convenient to state that when the state that the theory about the blood was supported. In light of this fact the only DNA that was found in Mr. Calhoun's pocket was Mr. Calhoun's and the victim.** This is very crucial evidence that should been received by the defense on time giving them time to examine the information properly. When that did not occur defense should have objected to the

statements the states attorney made in reference to this information. By not doing so the defense attorney professional performance fell below the professional standard in which the constitution guarantees. **If this document was properly examined by the defense, there is a very great chance that the Petitioner would have been acquitted or given a lesser sentence.**

3.) **The lab report also state CS-001** sealed cardboard knife box containing: knife, (folding blade and handle) blood was indicated on the blade of this item. Blade only; which was inconclusive. But again when detectives opened the knife, did they contaminate the knife handle or was the DNA transferred by Mr. Calhoun.

4.) The only DNA on jeans, shorts and in the right pocket of Tremain Calhoun Jr. (co-defendant) was Tremain Calhoun Jr. and the victim (Mr. Darren Bell). It was alleged by the state that Eric Banks blood was on the handle of the knife. Then alleged by the lab analyst that skin cells were on the handle of the knife. But none of the blood or skin cells of the Petitioner (Eric Banks) was found in the pocket of Mr. Calhoun. The right pocket is where Mr. Calhoun testified on the stand, that he places the knife there after the alleged stabbing. Then he ran in the woods and to the vehicle. He got into the vehicle. When officers arrived he pulled the knife out of his pocket and threw it out the window into the wet snow. With all the friction, moving and rubbing none of the Petitioners blood or skin cells was found in the pocket or on the jeans of Mr. Calhoun. Also the handle was not tested for prints. This is an example of what type of inconsistencies that the lab report holds. This is the report that was prepared by Mrs. Ashley Hayes. She even testified contrary to her report and the states attorney's report.

5.) **Item S2-004 (tan pants – stains c)** DNA from at least two individuals. But Eric Banks, Erica Banks and Tremain Calhoun Jr. was excluded. Blood on the tan paints; eight stains only

two was tested. With everyone excluded who did the DNA belong to and after that was discovered why wasn't the other samples tested? Not testing all samples is a denial of the Petitioner due process.

**6.) Item S3-005 (shorts DNA two individuals).** Major contributor is Darren Bell (victim) and Tremain Calhoun Jr. shorts had stains of just himself and the victim. **By Petitioners trial counsel, not objecting to this document their performance was deficient and this deficient performance prejudiced Petitioner; because the jury used this lab report to convict the Petitioner.** If defense would have objected to the late report and examined it properly, the Petitioner more than likely would have been acquitted or given a lesser sentence for accessary after the fact.

**D.) The PSI report was inaccurate and did not contain much about the Petitioner background.** Jobs, Originations, and schools do background reports because it reflects on a person character. It shins a light on the possibility of whether a person could possibly commit such a crime that they are being charged for. It helps the court listen a little closer to a defendant claim of innocents. The mere fact that a person is charged and convicted of a crime does not constitute true guilt, especially when evidence says otherwise. People are exonerated all the time. This is why every element of the case that deals with evidence, understanding and character is very crucial. They all has an accumulative effect on the whole trial. **T-GAW pg. 19 line 17, pg. 20 line 11, 14, 25, pg. 27 line 1-18, pg. 28 line 6, 7, 8 pg. 29 line 20, pg. 31 line 17-18, T-JJH 321 line 10, 13, 15** (Defense attorney state) "you sent a lot of stuff but I didn't look at it in detail." He was speaking of the document that the state sent. It was the Petitioners attorney duty to examine the documents before trial.

**E.) Attorney failed to have the proper information that would negate the elements of old and out dated offenses that was used during trial. The States Attorney and the Defense Attorney argued over what was the charge of the alleged old offenses.**

1.) **T- GAW pg. 14 line 16-25 T-GAW pg. 15, 16, 17. The 1984** charge was theft not robbery.

2.) **The 1995 charge, Petitioner was paroled in 1999 and the parole was up in 2003.**

3.) **This is the Petitioner third incarceration.** The state claimed it was the Petitioner fourth incarceration. During the Post-Conviction hearing the Petitioner presented a notarized letter of incarceration with his photo that was prepared by case management at MCI-J. The letter stated that this was the Petitioner third incarceration. The information about the outdated or incorrect charges should have been fully investigated way before trial.

4.) **DUI and Paraphernalia charge was a fine.** These are all things that the defense attorney should have investigated especially when the Petitioner explained that the information was incorrect. *U.S. v. Russell; 221 F. 3d 615, 621 -22 (4th Cir. 2000) counsel's failure to confirm status of 2 of defendant prior convictions after defendant informed counsel that the convictions was invalid. Strickland v. Washington 466 U.S. 668, 88. U.S. v. Valerio 676 F. 3d 237, 648-48 (1st Cir. 2012) Presumption of reasonable when counsel utilized different tactics than client preferred.*

Upon request the defendant's counsel is entitled to a notice and a reasonable opportunity to attend any presentence investigation interview.  Courts have indicated that though presentence interview are not a critical stage of trial at which the Sixth amendment right to counsel attaches, requests for the presence of counsel at such interview should be honored. *U.S. v. Tisdale, 952 F.2d 934, 940 (6th Cir. 1992)* (adopting rule requiring probation office to honor defendants counsel request method of preserving fairness). Petitioner attorney made no request to attend even when client

asked attorney to be there. *FRED R. CRIM. P. 32(f) Rule 32 (f) (3) (a).* **The 2002 Amendment to Rule 32** establish strict time tables for stating and resolving alleged factual inaccuracies in the PSR (psi), the parties must make any objections to the PSR in writing after which probation officer may meet with parties or conduct further investigation. Attorney failure to review, investigate and object to documents and evidence denied the Petitioner due process. The PSI could have help lessen the Petitioners sentence. Attorney failed to attend PSI meeting, examine PSI report and request corrections before trial.  The information about the outdated or incorrect charges should have been fully investigated way before trial. All this information is very important because it shows thing about the Petitioners character. Which in turn shed some light on the fact as to whether a defendant could possibly commit such a crime. All elements of the Petitioners defense play a major part of his case. Attorney failed object, or investigate fully the elements and documents that surrounded his case. His poor performance denied the Petitioner his right to due process.


**F.) Attorney failed to object to prosecution flagrant commits and unsupported statements.** T-INC pg. 26 line 16-18 Prosecutor stated, <u>"you will also hear from the DNA examiner in this case and they will tell you that that knife was analyzed and the blood of Eric Banks was on it</u>. Not support by Mrs. Hayes report. Also T-INC pg. 15 line 7. The court "if the only other evidence as to the source of the only other evidence as to the source of the blood is "inconclusive" there is no other conclusive identification". T-INC pg. 16 line 13, T-INC pg. 16 line 22 "There is no one being the source of that." T-INC pg. 16 line 24 Prosecutor Mrs. Poma states, "Okay".

2.) T-GAW pg. 272 line 21-23 Question to lab analyst Mrs. Hayes "Do you recall whether you actually saw any blood on the handle?" Mrs. Hayes answered "I do not recall any blood on the

handle." This does not support statements and allegations made by prosecution in opening, closing and throughout the trial. <u>Defense attorney made no objections</u>.

3.) T-GAW pg. 261 when asked Mrs. Hayes in court did she do a serology test on the handle, she stated, "no." This does not support the statements the prosecution made to the jury. <u>The defense attorney made no objections to Mrs. Hayes report</u>.

4.) T- INC pg. 15 line 7, pg. 16 line 13 line 22. The court ruled that inconclusive evidence about the blade will not be brought into trial due to there is no source of identification. The prosecution used improper methods to enter this evidence confusing the jury. T-INC pg. 37 line 9-16. "The defendant never really gave a direct explanation of why he is the major contributor on the blade of the handle and Tremain Calhoun Jr. is not only the major contributor he is not only not a minor contributor. An indirect way to connect Mr. Eric Banks with the blade. Defense attorney did not object. The Petitioner gave an explanation as to how it may have gotten on there if it was on there. It was either when the Petitioner tried to stop Mr. Calhoun from continuing to stab Mr. Bell (victim) or it could have been placed on there by Mr. Calhoun from when he helped Mr. Banks up and the blood was transferred on his hand. If it was on the knife. *Drank v. Port Vondo, 553 F. 3d 230, 241 (2nd Cir. 2009)*. "The court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury. The attorney never objected to any of the fragrant comments or unjust tactics by the States Attorney; his performance was ineffective. These statements confused the jury, which is very crucial to the trial. Defense attorney did not request or instruct the jury to disregard the prosecution actions or moved for a mistrial, *Vandegrift v. State 237 Md. 305, 206 A. 2d 250 (1965)*. The Prosecution fragrant committees contaminated the jury and smeared the facts. This was a form of ineffective

assistance of counsel. If wasn't for lack of attorney's performance Petitioner may have been acquitted or presented with a mistrial. **Further this issue was not waived, Petitioner had no part in preparing the appeal that was filed. And was not given any assistance with the writ of certiorari. At the Post Conviction hearing the judge told the Petitioner that he had his petition, transcript and all of his document and he know what is on there, he than instructed the Petitioner to tell him something that he did not know. Instead of sticking to the Petition and any amendment. This was a form of a denial of a Post-Conviction hearing. <u>It is the law that at the Petitioner's first Post-Conviction hearing every issue should be properly addressed. The issue of the fragrant committees made by the Prosecution; that the Petitioner's attorney failed to object should have been heard at the Post-Conviction hearing.</u>**

**G.) Trial counsel failed to present to the jury previous interrogation questions and interview reports of the State's primary identification witness, Tremain Calhoun.** In reference to the interrogatory questions; issues were raised to the prosecution by the defense attorney in the form of a letter, but not raised or presented in court. T-JMM pg. 128 line 15-20 Tremain Calhoun Jr. admits to giving three different statements on Oct. 28, Nov. 18, and Nov. 22; all inconsistent as to what occurred. *Md. Rule 5-403* although relevant, evidence maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice confusion of time. It shows Mr. Calhoun Jr. creditability. *Brown v. state 281 Md. 241, 243-244 (1977) (quoting Luery v. State, 116 MD. 284 (1911)),* We explained the reason behind the rule, as follows: "[T]he evidences of an accomplice is universally received with caution and weighed and scrutinized with great care... When such a one has as a motive the prospect of freedom, a milder sentence or the favor of the officers who have him in charge, an innocent one may undoubtedly be made to suffer, if great caution is not used. Hence, it would seem to be safer to require some corroboration. *Decker v.*

*State, 408 Md. 631, 971 A. 2d 268 (2009) Parker v. Housing Auth.,129 Md. App. 482, 742 A. 2d*

*522 (1999).* Not just the fact that Mr. Calhoun gave three different statement as to what occurred

the night of the incident; The statements should have been presented to the court and the jury. This

was a denial of due process. The same way a defendant has the right to confront his accuser he

should have the right view or hear the statements that was made.

**H.) Attorney failed to object to statements allegedly made by petitioner or co-defendants;**

after no Miranda Rights was even read or given to any of defendants. *Michigan v. Tucker, 417*

*U.S. 433, 444 (1974)* that Miranda warnings are prophylactic and are not themselves rights

protected by the constitution but are instead measures to insure that the right against compulsory

self-incrimination is protected. *Dickerson v. Patane 542 U.S. 630, 637 (2004).* Nowhere in the

transcript, the police report or in any discovery will you find any information or statements that

support that Miranda rights was read or given to defendants. Here is another issue Petitioner

addressed in his petition. The law state that the Miranda rights should be read to a defendant at the

time of his or her arrest. This eliminate the issue of self-incrimination.  This was not done; so this

was an issue that the Petitioner attorney should have raised.  **But, was told by the judge at Post**

**Conviction hearing to tell him something he did not know because he had the Petitioners**

**transcript and his petition. He said he knew what was in there. So the Petitioner took another**

**route as instructed by the judge. Petitioner felt this was a tactic that took advantage of his**

**lack of knowledge about a Post-Conviction proceeding. In all actuality the Petitioner was**

**denied a Post-Conviction.  Attorney did not assist in making sure every issue was heard.**

**I.) Attorney failed to object to DVD'S** that was sent to a gentleman who was not attached or

related to the case. No Voir dire questions was asked of the jury as to whether anyone knew this

gentleman. During trial or before trial this issue was not discussed about the DVD's being sent to

the wrong address. The evidence was viewed by others who was not a police officer, a state's attorney, defense counsel or connected to the case in any form or fashion. The Petitioner gain knowledge of this information from a report prepared by Det. Rattell. During the motion hearing, the Petitioner trial counsel failed to present evidence from the investigation report (pg. 106, 107 and 108) to the trial court and explain how the evidence was seen by someone not connected to the case.

## INVESTIGATION REPORT PG. 106,107 AND 108

On January 30, 2013, I Det. Rattell received an anonymous phone call from someone who stated they were friends of Tremain Calhoun mother. He wanted to know if Tremain was going to be charged with the stabbing portion of the homicide. I Det. Rattell, explained I could not discuss details of the case with him. The caller had nothing further to ask and he didn't want to leave any further information.

ON March 22, 2013, I Det. Rattell received a phone call from William Dupree, Mr. Dupree was calling because his wife ordered something off of eBay and when the item came it contained evidence from the Darren Bell Homicide. I Det. Rattell immediately drove to Mr. Dupree's residence located in Columbia, Maryland. Once there, I got further details regarding the incident. Mr. Dupree stated on March 16, 2013, his wife brought a ring from Bellotesor's Jewelry on eBay. Yesterday March 21, 2013, Mr. Dupree responded to the post office to pick up the package. The box was a priority mail flat rate shipping box and it seemed to be sealed. When he got home and opened it he found a ring box and then numerous DVD's Mr. Dupree was confused by the DVD's and put one in his computer to see what was on them. On the first DVD Mr. Dupree looked at were crime scene photographs from the Darren Bell homicide. Because the pictures had labels on them, he was able to track the case to Anne Arundel County and then to me Det. Rattell, in the homicide

unit. Looking at the DVD's that contained pictures, interviews, surveillance, and face book search

warrants results. I Det. Rattell collected the evidence and took it back to the criminal investigation

division. I Det. Rattell called Ms. Poma the Assistant States Attorney to the case and explained the

situation to her. She was able to determine the DVD's were part of a discovery package that she

had sent to one of the Defense Attorney's David Putzi. He clarified that he had received a package

from her, but the package, had already been opened and resealed by the post office. The package

was missing all of the DVD's that should have been included in the discovery. I was able to track

down the seller from eBay, Rick Buenrostro (650-368-5776). Mr. Buenrostro, explained he sent

the package out from his home in a priority mail flat rate shipping box. The box was stapled on

the two sides and filed with the ring and packing peanuts only. Mr. Buentostro denied having

knowledge of the DVD's or the Bell homicide. Mr. Buentostro gave me the shipping confirmation

number and I was able to track the package from his home in Redwood City, California on March

21, 2013. The Petitioner's attorney should have objected to this evidence being allowed in court.

Also should have asked the jury several voir dire questions as to the jury knowing any of the men

not related to the case that was involved in the improper chain of custody or did they have any

family that work for the post office. This was ineffective assistance of counsel and a denial of the

petitioner due process right. The court of Appeals granted Washington's cert. petition and ordered

a new trial on the ground "the trial court erred in admitting the videotape... without first requiring

an adequate foundation to support a finding that the matter in question is what the state claimed it

to be." *Washington v. State, 406 Md. 642, 655-56, 961 A. 2d 1110, (2008).* The requirements of

authentication or identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what its proponent claims." A videotape

is considered a photograph for admissibility purposes. It is admissible in evidence and is subject

to the same general rules of admissibility as a photograph. *Dept. of Safety v. Cole, 342 Md. 12, 20, 672 A. 2d 1115, 1119* (1996). Photograph manipulation, alteration and fabrication are nothing new, nor are such changes unique to digital imaging, although it might be easier in this digital age. **By law the CD's are admissible. But after being viewed by several people unrelated to the case leaves the issue of Voir Dire questions open.** Counsel failed to ask the jury voir dire question concerning the CD's nor did he object to the use of the CD's during trial. **The Sixth Amendment provides that an individual accused of a crime has a trial by an impartial jury.**

**Remmer v. U.S. 227, 29 (1954) (presumption of prejudice applicable only if contact with outside person relates to factual evidence not developed at trial).**

**Mu'min v. Va., 500 U.S. 415, 431 (1991) voir dire enable court to select impartial jury and assists counsel in exercise preempt challenge.**

**MPJI-Cr100-Relying on information from any other source outside the courtroom, including social media sources, is unfair because the parties do not have the opportunity to refute, explain or correct it, and the information may be inaccurate or missing. You must base your decision only on the evidence that is presented in court.** There was no way to know if the jury knew the gentleman who viewed the cd's containing the evidence for the case. To assume that he knew no one in the court is a denial of the Petitioners due process right. The states attorney nor the Petitioners attorney brought this issue to the Petitioners attention. This was a form of ineffective counsel and a denial of due process.

**J.) failed to raise very crucial facts cross examination or closing.**

1.) Tremain Calhoun Jr. admitted to drinking a lot that day of the incident. He stated he had a buzz. The victim who Mr. Tremain was drinking with drinking with blood alcohol level was .20 or above during the autopsy. Mr. Darren Bell (victim) girlfriend stated his words sound slurred when he

called her that morning. Tremain Calhoun Jr. actions that night doesn't support his stand after the fact in court. Petitioner stated Erica Banks words sounded slurred when she called. Tremain Calhoun Jr. actions that night does not support his stand after the fact in court. He states that he saw Erica pull a gun on the victim, but he **stayed.** They discussed plan at 7-11 and he **stayed still.** He even went back to the scene a second time. **Which leaves question to Tremain Calhoun Jr. state of mind that day of the incident. No breathalyzer was taken.**

A.) Drunkenness physiologically; the amount of alcohol in the brain determines the degree of intoxication. Except in an autopsy, however a direct measurement of this quantity is not feasible. Nevertheless, samples of blood, urine, saliva or breath can be taken and the alcohol levels could be measured. Which none was taken at the scene and taken hours later at the detention center. Using these measurements determine whether a person is intoxicated raises two technical problems the accuracy of the measurement itself, and the extent of the correlation between concentration of alcohol in the sample and the degree of intoxication. **Even where the measured values are reliable and accurate the substantial variability in tolerances for alcohol absorption rates and clearance rates, both among individuals and within the same individual from one situation to another complicates efforts to deduce the true extent of intoxication at time of an arrest or accident.** *Commonwealth v. Gonzalez, 519 Pa. 116, 546 A. 2d 26 (1988), noted 62 Temple L. Rev. 757 (1989)* (expert unable to extrapolate BAC (blood and alcohol content) earlier time without knowing when last drink was consumed). It's hard to know assume or agree as to Tremain Calhoun Jr., or Erica Banks actions that night due to their intoxication and state of mind. Detective Rattell admitted they did something different than regular protocol for crime scene and evidence T-jjh pg. 263 line 3, line 17. The states witness and the other co-defendant's state of mind

during the time of the alleged crime was very important. It shows that the possibility of the statement being incorrect or their action

## PROSECUTION MISCONDUCT

The prosecution's duty in a criminal prosecution is to seek justice. Therefore, the prosecutor should prosecute with earnestness and vigor, but may not use improper methods calculated to produce a wrongful conviction.

### Forensic Biology Report

Lab report by Mrs. Ashley Hayes states on page #1 (CS-001) Sealed cardboard knife box containing: knife, folding (blade and handle) blood was indicated on the blade of this item. (Only the blade). Which, the Prosecution did not mention or read from in court. Prosecution went straight to pg. #3, never presenting pg. #1.  PG.#3 states item (CS-001) knife, folding handle, a mixture of DNA from at least two individuals was obtained from the handle of this item. The major component of this mixture matches the known DNA profile of Eric Banks. The minor component is consistent with the known DNA profile of Darren Bell. The major component of this mixture is suitable for the entry in the combined DNA index system.

1.) How is this possible with no blood on the handle?

2.) No serology test.

3.) No skin cell statistics

4.) Lab analyst testified she saw no blood on the handle

5.) Victim blood was on the handle after the lab analyst stated that there was no blood on the handle

6.) Why didn't the Prosecution read from pg.#1 of the lab report, which illustrate this fact?
   Not reading page #1 is a form of exculpatory evidence. ***Brady v. State***

7.) T-pg. #26 line 16-18 Prosecution go on to say "You will also hear from the DNA examiner in the case and they will tell you that that knife was analyzed and the handle of that knife had the blood of Eric Banks on it." Mrs. Hayes or her report does not support these statements.

8.) T-gaw – pg.272 line 21-23 question to lab tech Mrs. Ashley Hayes, "Do you recall whether you actually saw any blood on the handle of the knife? Mrs. Hayes answer, "I do not recall any blood on the handle."

9.) T-gaw pg. 261 line 6 Mrs. Hayes states, "Serology is the study of bodily fluids such as blood, semen and saliva." Mrs. Hayes was asked in court; did she perform a serology test on the handle of the knife; she stated no. This does not support the allegations made by the prosecutor. ***Whack v. State Aug. 21, 2013, 433 Md. 728.***

<u>U.S. v. Carr, 424 F3d 213, 227 (2nd Cir. 2005)</u> An improper remark by a prosecutor will justify a reversal by this court only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.

### In reference to the blade

1.) T-Inc pg. 15 line 7 **THE COURT**

If the only other evidence as to the source of the blood is "inconclusive" there is no other conclusive identification.

2.) T-Inc pg. 16 line 13 **THE COURT**

***Rule 5-403*** says, "Although relevant, evidence may be excluded if it's probative valve is substantially outweighed by the danger of unfair or prejudice, confusion of misleading the jury or consideration of undue delay, waste of time or needless presentation of cumulative evidence." "In this case I am ruling that inconclusive evidence."

3.) T-Inc. pg. 16 line 22 **THE COURT**

"There is no one as being the source of that."

T-pg .16 line 24 Prosecutor (Mrs. Poma) states: "Okay"

**If this is the ruling of the court the Prosecution made an error by still making unsupported**

**and mischaracterized allegations. *Whack v. State Aug. 21,2013 433 Md. 728* Trial court**

**should have granted mistrial after prosecutor mischaracterized statistical significance of**

**DNA evidence in closing arguments, indicating that defendant's DNA was on the armrest**

**of the victim's vehicle rather than that the analysis indicated that defendant could not be**

**excluded as a contributor, as identity was central question for the jury.**

*MD. Rule 5-407* **(a) In general when after an event measure are taken when if it effects at**

**the time of the event less likely to occurred, evidence of the subsequent measure is not**

**admissible to prove negligence or culpable conduct in connection with the event.**

*MD. Rule 5-103* **Ruling on evidence (b) (c)**

4.) T-Inc. pg. 15 line 7 pg. 16 line 13 pg.16 line 22

The court ruled that the inconclusive evidence about the blade would not be brought into

trial due to there is no source. The Prosecution used improper methods to enter this

improper alleged evidence confusing the jury. Planting a seed within the jury minds.

5.) T-Inc pg. 37 line 9 -16 Prosecution states "The defendant never really gave a direct

explanation of why he is the major contributor on the <u>blade</u> of the handle and Tremain

Calhoun is not only not the major contributor." In aims of connecting MR. Banks to the

<u>blade</u>. ***Broom v. Mitchell, 441 F 3d 392, 412 (6th Cir. 2006)* (prosecution's improper**

**and flagrant comments constitute misconduct if they "so [infect] the resulting**

**conviction, a denial of due process.**

6.) During the trial, the prosecution conveniently stated that there were alleged skin cells as evident. Even cohered the expert witness Mrs. Hayes to speak on skin cells. There is no mention of skin cells in Mrs. Hayes lab report. Mrs. Hayes state, "There was DNA of two individuals on the handle of the knife. The same handle that she said she did no serology test on. Nevertheless, the Prosecution stated in court before the jury that Mr. Banks blood was on the handle of the knife. Even though Mrs. Hayes state she found skin cells but, placed this information nowhere in lab report. This report was submitted into evidence. Mrs. Hayes also state there was the DNA of two individuals on the handle with no blood and no serology test. So were the victim Mr. Bell skin cells allegedly on the handle as well? Contradicting, unsupported and confusing to the jury. Digs also Armstead states no DNA evidence can be used without statistics.  LAB REPORT Ex:79. Lab Report was not given to defense until 2 days before presented in court.

7.) T-CCH pg. 13 line 24 Diggs and Armstead which states DNA evidence can be without statistics. He defenses didn't have enough time to prepare a defense to this late information. ***Brady v. State***

8.) T-GAW pg. 15 line 20-21 The Prosecution used a PSI report for sentencing without the PSI investigator being present. PSI was also incorrect and lacks much information. Inaccurate information about prior convictions, mother who was not diseased at the time of the trial, information of organizations such as the being the president of the Condo Association and etc.

## THE PROSECUTION WAS IN ERROR FOR REQUESTING THAT THE LAB GO OUTSIDE OF NORMAL PROTOCOL AND USE THIS REPORT FOR THE PETITIONER TRIAL. THIS DENIED THE PETITIONER DUE PROCESS.

1.) T-CCH pg. 10 States Attorney states "States, (Ashely Hayes), explained to me what I explained to counsel yesterday, which was that they had SOP's about how they handle this type of situation where there are certain numbers of alleles that it is not a match but they can't exclude the person either where they put in the report cannot be excluded."

2.) T-CCH pg. 11 line 21-25 "And that they, according to their SOP's generally do not give a statistic on it unless the –and I don't want to misquote it." "If the inclusion is **probative**, then we provide statistics in the report."

3.) T-CCH pg. 12 line 8-15 States Attorney, "it is inclusive is perhaps if you don't provide the statistics. "Now granted, I am just getting into all this understanding with the statistics, but that is why I asked them whether they are able to do statistics and they said we can." Mrs. Hayes had to get approval from her supervisor.

4.) **Black's Law Define**-Probative evidence in the law of evidence having the effect of proof; tending to prove or actually proving. (2.) Testimony carrying quality of proof and having fitness to induce conviction of truth, consisting of fact and reason co-ordinate factors. See relevant evidence.

Inclusive-Embraced; comprehended; comprehending the stated limits or extremes. It is evident that Mrs. Hayes and her office felt that the report lacked the effect of proof or carried quality proof yielding the truth. **Because they didn't give statistics which is the normal protocol for evidence that merit statistics; they were asked to add it to the report by the request of the state's attorney.** This same report was late

inaccurate, cohered, and much unsupported as to the alleged blood and skin cells on the handle of the knife. Which should have been objected to by Petitioner's attorney and not used by the prosecution. **To request or to ask for something to be changed, altered, or added against the normal protocol, is the same as <u>cherry picking</u> the evidence. It is going outside of the standard of rules that was put in place governing the process and examination of evidence at the Anne Arundel County Lab.**

**8-605 Criminal Law** – Counterfeiting of public documents. (a) A person may not counterfeit, cause to be counterfeited or willingly aid or assist in counterfeiting.

**8-606 Criminal Law** – Making false entries in public records and related crimes.

**9-102 Criminal Law**- Subornation of perjury (a) prohibited – a person may not procure another to commit perjury as prohibited by § **9-101** of this subtitle.

**9-302 Criminal Law**- Inducing false testimony (1) influence a victim or witness to testify falsely or withhold testimony or (2) induce a victim or witness.

**9-501 Criminal Law** – false statements to law enforcement. (a) A person may not make or cause to be made a statement, report or complaint that the person knows to be false as a whole or in material part, to a law enforcement officer of the state.

The prosecution knew that Detective Rattell went outside of normal protocol in collecting evidence from the crime scene and still used the lab report and other evidence for the petitioner's trial.  T-GAW pg. 99 line 4 Defense attorney ask – "Down here where it say investigative checklist, con you read that to the jury?" She answered yes. It says "Investigative checklist, the property prepared investigation report serves as a checklist for most criminal investigations. However, for homicide investigations the crime scene check of list will be used to ensure the critical areas of the

investigation is not over looked." Question-so the directive indicates that the check off list will be used. Answer –yes. Question-You did not use it in this case. Answer – I did not, no. T-GAW pg. 99. She goes on to say she went down to CID and met the Petitioner and his co-defendants. Getting information from the defendants and then telling the lab as to what to test (cherry picking) is unconstitutional. Det. Rattell left the crime scene unattended for one hour. **The crime scene should be secure until it is released by the Forensic Team**. **The Md. Rule is that if it appears that the jury were actually misled or influenced of the accused by the remarks of the state's attorney there is enough grounds for a reversal.** *Wood v. State 192 Md. 643; Holbrook v. State supra 8 Md. App. at 172, A. 2d 473 at 67-68. Also see shoemaker v. State, supra; Kellum v. State, 223 MD. 80, 162 A. 2d 473 (1960).* **The prosecution misconduct and fragrant comments contaminated the jury and denied the Petitioner a fair trial. The Petitioner's attorney did not object to the fragrant comments or misconduct which was a denial of due process.**

## PROSECUTION MISCONDUCT DURING CLOSING ARGUMENTS

The Prosecution's duty in a criminal prosecution is to seek justice. Therefore, the Prosecutor should prosecute with earnestness and vigor, but may not use improper methods calculated to produce a wrongful conviction.

The Md. Rule is that if it appears that the jury were actually misled or influenced of the accused by the remarks of the state's attorney there is enough grounds for a reversal. *Wood v. State 192 Md. 643; Holbrook v. State supra 8 Md. App. at 172, A. 2d 473 at 67-68. Also see shoemaker v. State, supra; Kellum v. State, 223 MD. 80, 162 A. 2d 473 (1960).*

1.) T-JJH pg. 23 line 12-13-14 Prosecution, "And he did that by stabbing him over and over and over 21 times. While his knee was on his back holding him down, while Darren's face

was on the ground turned to the side. **The examiner report state that the wounds was from back to front. Which does not support the states theory.**

2.) There was no GSR on the Petitioner. **Other two co-defendants had GSR on them.**

3.) The victim had 9 cuts and 12 stab wounds of which was not done by Petitioner. (See medical examiner report.) **Some of the cuts was like scratches. But the Prosecutor stated to the jury that it was 21 stab wounds. <u>Mischaracterized evidence</u>. Wounds that was impossible for the Petitioner to administer due to body weight and height.**

4.) <u>The medical examiner report states that you could not tell if the victim was stabbed while standing or lying down. He also states that the victim was still mobile during the alleged shooting and stabbing.</u> **This statement here clearly refutes the state's theory.**

5.) The medical examiner state the wounds was from back to front which make the position the Prosecution said the body was in during the alleged stabbing would be legally impossible. **But the medical examiner report is consistent with what the Petitioner stated on the stand as to what occurred.**

6.) The position the Prosecution alleged the body was in during her closing statements, does not account for the cuts on the victim back shoulder, and hand. **None of the state's allegations were supported by the trial or any of the expert witnesses so by the conclusion of the case at closing these allegations should have been repeated. *Whelm v. State 326 A. 2d 707, 272 Md. 404, Cook v. State [no. 210 September Term, 1973]* Closing argument is exactly what the word implies; merely argument to persuade you to think in the posture of whoever is talking to you based on the testimony in the case... The only evidence that you hear comes from the witness in the case who testify or through exhibits that are filed in the case as exhibits." (Emphasis supplied). As a**

limitation upon the general scope of permissible closing argument this court in *Esterline v. State, 105 Md. 629, 66 A. 269 (1907),* caution that counsel should not be permitted by the court, over proper objections, to state comment upon facts not in evidence or to state what he could have proven. Persistence in such course of conduct mat furnish good grounds for a new trial.

7.) T-JJH pg. 26 line 10-13 Prosecution, "We know from the 7-11 video that they are not fighting. Erica does not appear to be particularly drunk. Tremain testified that the victim and Erica had words in the truck. Also the face book pages that was presented in court show that they had some type of disagreement. **To state that the video confirms Erica was not intoxicated is to make an assumption. Something that could not be proven. Erica and Tremain stated they had been driving all night. The video should not have shown in court after the DVD's was viewed by someone outside of the case. There is no way to know if anyone in the jury knew these gentlemen or if the information was placed on line after he viewed the evidence.**

8.) **The Prosecution was in error for vouching for Mr. Calhoun**

**T-Inc. pg 31 line 22** "And a part of the plea agreement, Tremain has agreed that he will be testifying truthfully in the trials of Eric and Erica." This is a form of direct vouching for the witness. *United States v. Scheetz, 293 F.3d –United States v. Hayes, 322 F. 3d 792, 8009 (4ᵗʰ Cir. 2003) United States v. Lewis, 10 F. 3d 1086 (4ᵗʰ Cir. 1993). Berger v. United States, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. CT. 629 (1935).* There was a great degree as to where comments could have misled the jury. They were very isolated statements. The strength of proof of guilt towards the Petitioner absent the inappropriate comments was very unsupported and the comments were made by prosecution to direct the jury attention or persuade their thinking. Which are grounds for

reversible error. Prosecution, Mr. Trainer as well as Detective Rattell took several statements from Mr. Calhoun until they were convinced as what one to use. *9-501 Criminal Law* – <u>false statements to law to law enforcement (a) a person may not make or cause to be made a statement, report or complaint that the person knows to be false as a whole or in material part, to a law enforcement officer of the state.</u> The Md. Rule is that if it appears that the jury were actually misled or influenced of the accused by the remarks of the state's attorney there is enough grounds for a reversal. *Wood v. State 192 Md. 643; Holbrook v. State supra 8 Md. App. at 172, A. 2d 473 at 67-68. Also see shoemaker v. State, supra; Kellum v. State, 223 MD. 80, 162 A. 2d 473 (1960).*

## COURT ERROR

1.) Sentence Enhancement- The judge stated during the sentencing in court that he was giving the Petitioner 2 extra points for the victim's wounds. After the Petitioner was already charged for the actual charge itself. T-jjh pg.295 sentence enhancement. T-gaw pg 12-13 sentence enhancement. This is a form of double jeopardy.

2.) The court erred by allowing computer generated call records. The Prosecution used Mr. Banks phone records to determine when he arrive on the scene of the crime also tried to pin point the conversation between him and his daughter without using the phone towers. T-gaw pg. 78 line 1-17, 22 "Prosecution is not a witness or expert so she could not explain what a routed call is." **As she did on the record**. The court allowed it. Md. Rule 5-802 Hearsay Rule-Computer generated call records. It was error for the trial court to admit call records obtained from defendant's phone service provider which connected his cell phone with the victim phone in defendant's criminal matter, because although they did not constitute hearsay to the extent they were computer generated, the state did not show the records were produce in order to qualify within that non hearsay category. In

The Petitioners case the conversation was allegedly between him and his daughter. *Baker v. State 223 Md. App. 750, 117 A. 3d 676 2015.*

3.) The court erred by allowing the testimony of Mr. Calhoun who statements were inconsistent with the prior three accounts of what occurred that he stated to Prosecution, Mr. Trainer and Det. Rattell. T-jjh pg. 134 line 24 "how many times Calhoun testifies." T- jjh pg. 136 line 24 speaks to Mr. Trainer, Det. Rattell and the Prosecution. Md. Rule 5-801- Hearsay Exception- Prior inconsistent statements. The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross examination concerning the statement are not excluded by the hearsay rule, (a) statement that is inconsistent with the declarants if the statements was (1) given under oath subject to the penalty of perjury at a trial, hearing or other proceedings (2) reduced to writing and was signed by the declarant; (3) recorded in substantially vibration fashion by stenographic or electronic means contemn poraneously with making of the statement.

4.) The court erred by not asking the jury voir dire questions as to whether or not any of the jury knew the gentleman who sent the ring pocket or the gentleman who allegedly received the DVD's containing evidence of the Petitioner's case. To assume that no one knew the two gentle is a denial of due process.

## Conclusion

Even when no single aspect of the representation falls below the minimum standards required under the sixth Amendment, the cumulate effect of counsel's entire performance may still result in a denial of effective assistance of counsel. *See, Cirincione v State, 119 Md. app. 471 (1998); Bowers v. State, 320 Md. 416, 436 (1990).* "The cumulate effect of errors may deprive a Petitioner of the due process right to a fair trial" *Ceja v. Stewart, 97*

F. 3d 1246, 1254 (9th Cir. 1996) The effect of the aforementioned errors singularly and in their existence aggregated petitioner. The Petitioner prays that his Writ of Habeas Corpus be granted, that the conviction and sentence in the instant matter be vacated and the Petitioner be released forthwith.

Respectfully submitted,

Eric Banks Sr.

Mr. Eric Banks Sr., prose
Doc.# 424687
M.C.I-J
P.O. Box 549
Jessup, MD. 20794

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 19 day of August 2020, a true and correct copy of Petitioners Writ of Habeas Corpus was mailed, certified to:

Clerk of Court
U.S. District Court for MD.
Greenbelt Division
6500 Cherrywood Lane, Suite 300
Greenbelt, MD. 20770


Attorney General for Maryland
200 St. Paul Place
Baltimore, MD. 21202


Eric G. Banks Sr., prose.
D.O.C. #424637
M.C.I~J
P.O. Box 549
Jessup, MD. 20794